UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
:
UNITED STATES OF AMERICA          :
:
:
  - v. -                          :       09 Cr. 1170 (RJS)
:
BRIEN SANTARLAS,                  :
:
            Defendant.            :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S SENTENCING MEMORANDUM


                                            PREET BHARARA
                                            United States Attorney for the Southern
                                            District of New York

ANDREW L. FISH
REED M. BRODSKY
RICHARD C. TARLOWE
Assistant United States Attorneys

     - Of Counsel -



*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

November 3, 2011

Honorable Richard J. Sullivan
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York  10007

    **Re:   United States v. Brien Santarlas,**
          **09 Cr. 1170 (RJS)**

Dear Judge Sullivan:

    The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the substantial assistance that defendant Brien Santarlas has rendered in the investigation and prosecution of other persons. In light of these facts, the Government moves, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines.

    On December 10, 2009, Santarlas pleaded guilty to Counts One and Two of the above-captioned Information.  Count One of the Information charges the defendant with conspiring with others to commit securities fraud, in violation of Title 18, United States Code, Section 371, in connection with a scheme to defraud by executing securities trades based on material nonpublic information.  This charge carries a maximum sentence of five years' imprisonment, a maximum term of three years' supervised release, a maximum fine, pursuant to Title 18, United States Code, § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense, and a mandatory $100 special assessment.

Honorable Richard J. Sullivan
November 3, 2011
Page 2

Count Two of the Information charges the defendant with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section Two, in connection with a scheme to defraud by executing securities trades based on material nonpublic information regarding the acquisition of 3Com Corporation.  This charge carries a maximum sentence of 20 years' imprisonment, a maximum term of three years' supervised release, a maximum fine of $5 million, and a mandatory $100 special assessment.

I.      **Santarlas's Criminal Conduct**

While working as associates at Ropes & Gray LLP, Santarlas and Arthur Cutillo misappropriated material, nonpublic information (the "Ropes & Gray inside information") in violation of their duties of trust and confidence to Ropes & Gray and its clients.  Santarlas and Cutillo provided the Ropes & Gray inside information to Jason Goldfarb with the understanding that (1) Goldfarb would provide the information to a stock trader and (2) the stock trader would pay them for the information.  The stock trader was Zvi Goffer.

Santarlas and Cutillo obtained the Ropes & Gray inside information by, among other things, speaking with colleagues, looking for documents on communal printers, and searching the Ropes & Gray document management system.

As part of the scheme, in or about July or August 2007, Santarlas and Cutillo told Goldfarb that Ropes & Gray was working on the acquisition of 3Com Corporation ("3Com").  Santarlas and Cutillo told Goldfarb information about the transaction that they misappropriated from Ropes & Gray.  Cutillo and Santarlas periodically updated Goldfarb on the progress of the transaction until it was publicly announced.

Similarly, in or about late October or November 2007, Cutillo and Santarlas told Goldfarb that Ropes & Gray was working on the acquisition of Axcan Pharma, Inc. ("Axcan"). Cutillo and Santarlas periodically updated Goldfarb on the progress of the transaction until it was publicly announced.

In February 2008, Santarlas and Cutillo told Goldfarb that Ropes & Gray was working on the acquisition of P.F. Chang's China Bistro, Inc.  No transaction involving P.F. Chang's was ever announced.

Honorable Richard J. Sullivan
November 3, 2011
Page 3

In March 2008, Cutillo observed other Ropes & Gray employees preparing a "closing room" in connection with the acquisition of the Clear Channel Communications, Inc. Santarlas and Cutillo mistakenly believed that this meant that the Clear Channel acquisition was going to close, and they passed this information to Goldfarb. In fact, the closing room was set up as a prelude to litigation relating to the financing of the transaction, and the transaction did not close in March 2008.

In May 2008, Cutillo learned that the litigation relating to the Clear Channel transaction was going to be settled, and he passed that information to Goldfarb.

Santarlas and Cutillo also passed information about other Ropes & Gray activities to Goldfarb, but none of this information led to profitable trades.

After the acquisition of 3Com was announced, Zvi Goffer paid approximately $75,000 to Goldfarb, Cutillo and Santarlas. After the Axcan acquisition was announced, Zvi Goffer paid approximately $22,500 to Goldfarb, Cutillo and Santarlas.

Zvi Goffer's trades based on the 3Com information resulted in profits of approximately $378,608. Goffer did not trade on the Axcan information. Goffer lost money by trading on the March 2008 Clear Channel tip. Goffer's trades on the May 2008 Clear Channel tip resulted in profits of approximately $1,002,323.

Goffer passed the Ropes & Gray information to other individuals, who earned over $7 million by trading on the information. However, Santarlas and Cutillo did not believe that the trader (Goffer) was sharing their information with others.

Santarlas, Cutillo, Goldfarb and Zvi Goffer used prepaid cellular telephones obtained by Zvi Goffer to communicate regarding inside information. The conspirators used prepaid cellular telephones to communicate in order to avoid detection by authorities.

Honorable Richard J. Sullivan
November 3, 2011
Page 4

## II.  Santarlas's Cooperation

On November 4, 2009, agents of the Federal Bureau of Investigation ("FBI") contacted Santarlas and sought his cooperation.  Santarlas's telephone conversations had not been intercepted in the course of the Government's wiretap investigation.  Moreover, at the time the agents approached Santarlas, the Government's investigation was covert.  As a result, the Government had not yet obtained from Ropes & Gray any information relating to Santarlas's use of the Ropes & Gray document management system.  Thus, at the time the FBI agents first contacted Santarlas, they had very limited evidence of Santarlas's involvement in criminal activity.  Nevertheless, when the agents confronted Santarlas, he immediately confessed and agreed to cooperate.  During the initial interview, Santarlas falsely told the agents that he received only $8,000 for the 3Com information, but his description of the insider trading scheme and his role in it was otherwise generally accurate.

Santarlas immediately agreed to meet with Cutillo while wearing a recording device.  The consensually recorded meeting took place on November 4, 2009 -- the same day that the FBI agents initially approached Santarlas.  During the consensually recorded meeting, Santarlas elicited from Cutillo statements that implicated Cutillo in the insider trading scheme.  Cutillo discussed, among other things, the cash payments that Cutillo and Santarlas received and the conspirators' use of prepaid cellular telephones.  Cutillo also questioned Santarlas about whether he was wearing a "wire" and warned Santarlas not to cooperate.

Santarlas's immediate agreement to cooperate and to record a meeting with Cutillo had a truly dramatic impact on the Government's investigation.  The consensually recorded conversation comprised direct evidence of Cutillo's participation in the scheme.  Notably, following his arrest on November 5, 2009, Cutillo quickly indicated that he would be pleading guilty. Moreover, because of Santarlas's cooperation, the other defendants charged in United States v. Zvi Goffer et al., 10 Cr. 56 (RJS), did not seriously pursue a defense grounded on the claim that attorneys had not actually misappropriated information from Ropes & Gray.  If Santarlas had not immediately cooperated and secured the consensually recorded conversation with Cutillo, the defendants in the Goffer case likely would have claimed that Jason Goldfarb had concocted a source that did not actually exist.

Honorable Richard J. Sullivan
November 3, 2011
Page 5

  Santarlas was a crucial witness at the trial of Zvi Goffer, Emanuel Goffer and Michael Kimelman.  Santarlas described the operation of the insider trading scheme, including the payments he received and the information that he and Cutillo misappropriated.  Santarlas explained how he accessed documents from the Ropes & Gray document management system as part of the scheme, and he provided context for the Ropes & Gray records showing Santarlas's use of the Ropes & Gray document management system.  Santarlas also provided important context for some of the intercepted telephone conversations involving the trial defendants.  In light of Santarlas's credible trial testimony, Zvi Goffer's trial defense that Jason Goldfarb was simply a gossip who had not actually obtained material nonpublic information from Santarlas and Cutillo was properly rejected by the jury.

  In preparation for his trial testimony, Santarlas spent a great deal of time meeting with the Government and reviewing pertinent evidence.

### III. Conclusion

  Santarlas's immediate cooperation with the Government's investigation was a key part of the successful prosecution of all the defendants in United States v. Zvi Goffer et al., 10 Cr. 56 (RJS).  Santarlas immediately agreed to have a consensually recorded conversation with his friend and co-conspirator, Arthur Cutillo.  That recorded conversation and Santarlas's cooperation precluded the Goffer defendants from raising certain defenses to the insider trading charges.  Indeed, the fact that the Ropes & Gray attorneys had misappropriated information was largely undisputed during the course of the proceedings.  Santarlas's trial testimony was important to the conviction of the three trial defendants, as it established the manner in which Zvi Goffer's network obtained inside information.

  The conviction of all defendants in the Goffer case was significant, because it sent a strong message to the financial community that insider trading can and will be detected and successfully prosecuted, irrespective of efforts to avoid detection.

  Santarlas's cooperation has provided substantial assistance to the Government in the investigation and prosecution of the Goffer defendants.  Therefore, this Court should sentence

Honorable Richard J. Sullivan
November 3, 2011
Page 6

Santarlas in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Sentencing Guidelines.

                                      Respectfully submitted,

                                      PREET BHARARA
                                      United States Attorney


                          By:          /s/
                                      Andrew L. Fish
                                      Reed M. Brodsky
                                      Richard C. Tarlowe
                                      Assistant United States Attorneys
                                      Tel.:  (212) 637-2548/2492/2330

cc:  U.S. Probation Officer Katrina Minus-Shepard
     Robert G. Stahl, Esq.